MARGARET J. DOYLE, Appellant, v. THE PENNSYLVANIA AND NEW YORK CANAL AND RAILROAD COMPANY, Respondent.

(Argued October 9, 1893; decided October 17, 1893.)

APPEAL from order of the General Term of the Superior Court of Buffalo, made July 6, 1892, which affirmed an order of Special Term denying a motion by defendant for a new trial on the facts, setting aside the verdict and granting a new trial on questions of law only.

This action was brought to recover damages for injuries received by plaintiff by being struck by a locomotive attached to a train of cars belonging to defendant, operated by it on the tracks of the Lehigh Valley railroad, in Perry street, in the city of Buffalo.

It appeared that the plaintiff, who was an active and intelligent woman, fifty-three years of age, at about six o'clock in the evening of November 12, 1888, was proceeding easterly along the southerly side of Perry street in said city, with which she was quite unacquainted. The night was very dark, plaintiff had crossed Selkirk street, and passed over twenty-four tracks of four railroads which cross Perry street at that point and pass under the main line of the Lehigh Valley railroad, which is built upon an embankment. She saw a train of cars and the headlight of the locomotive coming westerly along the foot of the embankment, and testified that no bell was rung or whistle blown, and that she supposed the train was proceeding westerly along said embankment on the northerly line of Perry street. She continued along the sidewalk a short distance, when she was struck by said train as it was crossing said sidewalk on a curve. She did not see the train coming across the street, or until the locomotive struck her.

Other facts are stated in the opinion, which is given in full.

"A careful perusal of the record leads us to the conclusion that the trial judge did not err in submitting the questions of negligence on the part of the defendant, and of contributory negligence on the part of the plaintiff, to the jury. The defendant's negligence, if any negligence on its

part existed, consisted in a want of due caution in the management of its train while crossing Perry street. Its main track was on the north side of Perry street, and passed westerly on an embankment on that side of the street towards the city. But it had constructed a single track across Perry street, which left its main line a short distance west of Peabody street, and, curving southeasterly and crossing the street obliquely, reached the south side of Perry street about 339 feet west of Peabody street. The track across Perry street was substantially on the grade of the street. The company maintained no flagman, and there was no sign indicating a railroad track at that point. The evidence tends to show that a person going easterly from Selkirk street on the south side of Perry street would not discover the existence of this track before reaching it, and, also, that seeing a train coming from the east on the main tracks, on the north side of Perry street, on a dark night, might be misled and not perceive that it diverged from the main track to cross Perry street until it had nearly reached the south side. This would be especially true of a person unacquainted with the locality, and who did not know of the existence of the track crossing Perry street, and who could follow the course of the main line along the embankment on the north side of Perry street.

"The situation imposed upon the defendant the duty of using care and moving with caution in crossing Perry street. The evidence on the part of the plaintiff is that the train, the movement of which she observed after she was thrown down, was going very fast, and there is evidence on the part of witnesses for the defendant other than the employees, from which the jury might reasonably infer that the train was moving much faster than four or four and a half miles an hour, which was the rate of speed fixed by the employees on the train. The plaintiff testified that no bell was rung, or whistle sounded, or other signal given from the train of its approach. She was somewhat corroborated on this point, but the engineer and fireman, and, perhaps, other employees, testified to the continuous ringing of the bell. This was a question for the jury.

"It further appears from the testimony of the fireman and

engineer that they did not see the plaintiff, and did not know until the following day that anyone had been struck, although it appeared that a person on the track could have been seen from the engine by a lookout. We think there was sufficient shown to require the submission of the question of the defendant's negligence to the jury. The contributory negligence of the plaintiff is claimed principally on the ground that from a distance of several hundred feet west of the point where the track of the defendant's road crossed Perry street, a train coming on the main line of the defendant's road from the east could be seen by a person going easterly on the south side of Perry street, and that in fact the plaintiff did see the train and the headlight before it reached the point where the train diverged to cross Perry street, and that it continued in her sight all the time until she was struck. But the circumstances are to be considered. She was rightfully on a public street, walking on the south sidewalk in the direction of the coming train. She had just crossed a large number of tracks of other roads in safety, and supposed that there was no other track crossing Perry street west of Peabody street. She did not know of the existence of this isolated track of the defendant, located about 250 feet east of the body of tracks just crossed by her. Its existence was not indicated by the conformation of the ground, nor by any flagman, or flaghouse, or other sign.

"She knew of the location of the main tracks of the defendant's road running along the north side of Perry street, and when she saw the headlight of the approaching train she supposed, as she testified, that it was going along the embankment on the north side of the street. She said: 'I didn't see the train come across the street where I was. Didn't know it was coming across the street; I thought it was going to keep on the bank.' If her attention had been challenged by bell or whistle this deception might have been corrected in time to have prevented any injury.

"We think it was for the jury to say, under all the circumstances, whether the plaintiff exercised ordinary prudence and care. The time occupied by the train in crossing the street was in any view of the speed very short; the plaintiff had no knowledge of the existence of the track, and nothing to put

her upon her guard in the way of affirmative acts on the part of the defendant; the night was very dark, and it is quite possible to conceive that under the circumstances she did not realize that the headlight was approaching her, until it was too late to escape the contact of the locomotive.

"The case was fairly submitted to the jury on the facts, and their finding was not contrary to law, because unsupported by evidence.

"The case recites that no question was made that the damages were excessive. The trial judge denied the motion for a new trial on the facts, but granted it 'solely upon questions of law raised by the exceptions,' and the order was affirmed by the General Term on the same ground, but no opinion was written either at Special or General Term. We have looked into the exceptions other than those arising on the motion for a nonsuit taken by the defendant, and we think none of them are well taken. (1) For reasons indicated the question as to the speed of the train was properly submitted to the jury; (2) there was no error in charging that the jury, in considering the question whether the train was managed carefully and prudently, might consider the fact that no flagman was maintained at the crossing; (3) there was no error in refusing to charge that the omission of the defendant to give warning by bell or whistle was immaterial, in view of the fact that the plaintiff saw the train. It was for the jury to say whether a sharp signal of danger might not have prevented the accident; (4) the exception to the charge, 'that if the plaintiff watched the engine and knew that it was approaching, and knowingly went in front of it, she was guilty of negligence, but that it was for the jury to say whether any further warning than such as was given by the headlight ought to have been given,' is sought to be supported on the ground that it leaves out the element of negligence on the part of the plaintiff. This charge was given in reply to a request to charge that the omission to ring the bell or sound the whistle was, under the circumstances, immaterial. But, taking it in connection with the main charge on the subject of the care required to be exercised by the plaintiff; the jury could not have been misled.

" We think no error of law was committed on the trial, and the orders of the Special and General Terms should be reversed, and judgment on the verdict ordered for the plaintiff, with costs."

*John Laughlin* for appellant.

*Frank Brundage* for respondent.

*Per Curiam* opinion for reversal.
All concur.
Orders reversed and judgment accordingly.